## WEST–FAIR ELECTRIC CONTRACTORS, and L.J. Coppola, Inc., Plaintiffs–Appellees,

v.

## AETNA CASUALTY & SURETY COMPANY, and Gilbane Building Company, Defendants–Appellants.

### No. 673, Docket 94–7558.

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 1994.

Certified to New York Court of Appeals Feb. 23, 1995.

---

Before MESKILL, WINTER and MAHONEY, Circuit Judges.

This appeal from a judgment of the United States District Court for the Southern District of New York, Brieant, J., came on to be heard on the record from said district court and was argued by counsel.

We believe the resolution of the issues presented in this appeal depends on the resolution of unsettled questions of New York state law. Therefore, on consideration of the briefs, appendix, record and the oral argument in this appeal, it is hereby ordered that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a complete set of the briefs, appendix, and record filed with this Court by the parties. This panel retains jurisdiction so that, after we receive a response from the New York Court of Appeals, we may dispose of the appeal. The parties are hereby ordered to bear equally such fees and costs, if any, as may be requested by the New York Court of Appeals.

Certificate to the New York Court of Appeals pursuant to McKinney's Revised 1993 New York Rules of Court § 500.17(b) (certification of unsettled questions of state law).

L.J. Coppola, Inc. (Coppola) seeks to recover on its written subcontract with Gilbane Construction Co. (Gilbane), or on a surety bond executed by Aetna Casualty & Surety Company (Aetna), for plumbing work performed on a construction project in White Plains, New York. Gilbane organized Coppola and other subcontractors for the project under a general contract with Fischer–Reese White Plains Associates L.P. (Fischer–Reese), the project's owner. Coppola, alleged in its complaint that, beginning on September 15, 1993 Gilbane encouraged Coppola to accelerate and complete its work by representing that financing from Fischer–Reese was only available for work completed through October 14, 1993. Coppola substantially completed its work by that date, but was not paid approximately $220,000 it was owed under its subcontract. Gilbane in turn was not paid by Fischer–Reese, which subsequently became insolvent.

Coppola's subcontract is silent as to the consequences of Fischer–Reese's insolvency. Fischer–Reese maintained no payment bond for Gilbane's benefit, although Gilbane maintained a payment bond through Aetna for the benefit of all of its subcontractors. That bond did not incorporate, however, the terms of the subcontract between Coppola and Gilbane. Section 3.2 of the subcontract ren-

dered payment to Coppola dependent on Gilbane's receipt of payment from Fischer–Reese:

> It is specifically understood and agreed that the payment to the trade contractor is dependent, as a *condition precedent,* upon the construction manager receiving contract payments, including retainer from the owner.

(emphasis added). Gilbane refused to pay Coppola the amount owed under its subcontract based on this "pay-when-paid" provision, and Aetna likewise refused to pay the amounts owed on the surety bond based on Gilbane's limitation of liability.

The pay-when-paid provision created a condition precedent that transferred the risk of Fischer–Reese's default to Coppola. *See David Fanarof, Inc. v. Dember Constr. Co.,* 195 A.D.2d 346, 600 N.Y.S.2d 226, 227–28 (1st Dep't 1993); *see also Architectural Sys., Inc. v. Gilbane Building Co.,* 760 F.Supp. 79 (D.Md.1991); *Gilbane Building Co. v. Brisk Waterproofing Co.,* 86 Md.App. 21, 585 A.2d 248 (Md.Ct.Spec.App.1991). The question thus remains whether that provision should be enforced in the face of applicable New York law. Section 34 of New York Lien Law states in pertinent part:

> Notwithstanding the provisions of any other law, any contract, agreement or understanding whereby the right to file or enforce any lien created under article two is waived, shall be void as against public policy and is wholly unenforceable. This section shall not preclude a requirement for a written waiver of the right to file a mechanic's lien [on full payment of a completed contract].

N.Y. Lien Law § 34 (McKinney's 1993). Coppola contends that the condition precedent created in section 3.2 acts to waive its right to enforce the lien it has filed against Gilbane, because a subcontractor cannot enforce a lien until the underlying debt is due. *See, e.g., In re Schiavone Construction Co.,* 181 A.D.2d 580, 581 N.Y.S.2d 322 (1st Dep't 1992). If the pay-when-paid provision is enforced, Coppola's debt might never come due because Gilbane might never receive payment from Fischer–Reese.

This result appears to run counter to New York public policy, which seeks to advance building and construction by assuring subcontractors of payment in the event of the insolvency of the owner or the general contractor. New York Lien Law § 3 permits a subcontractor which has performed work with the consent of the owner or its agent to have a lien on the property for the principal and interest of the value or the agreed price of the labor or materials. This provision was intended to protect the functioning of the construction industry. *See Schaghticoke Powder Co. v. Greenwich & Johnsonville Ry. Co.,* 183 N.Y. 306, 310, 76 N.E. 153, 154 (1905). Although enforcement of Coppola's subcontract thus appears to violate section 34 of New York Lien Law, the New York Court of Appeals has never addressed whether section 34 applies to pay-when-paid provisions.

The question of Aetna's liability on its surety bond likewise raises an unresolved issue of New York law. Aetna's bond required it to make payment if a subcontractor which fully performed had not been paid within ninety days:

> The above named Principal [Gilbane] and Surety [Aetna] hereby jointly and severally agree with the Owner [Fischer–Reese] that every [subcontractor] ... who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such [subcontractor's] work or labor was done or performed, or materials were furnished by such [subcontractor], may sue on this bond for the use of such [subcontractor].... The Owner shall not be liable for the payment of any costs or expenses of any such suit.

The bond is silent, however, as to the consequences of a nonpayment resulting from the Owner's default, and the bond does not incorporate by reference the terms of Coppola's subcontract with Gilbane.

Under New York law a surety's duty generally is coextensive with that of the principal on the bond. *See Eckstein v. Massachusetts Bonding & Ins. Co.,* 281 N.Y. 435, 24 N.E.2d 114 (1939); *MacKennan v. American Casualty Co.,* 169 A.D.2d 709, 564 N.Y.S.2d 462 (2d Dep't 1991); *Lamparter*

*Acoustical Prods., Ltd. v. Maryland Casualty Co.*, 64 A.D.2d 693, 407 N.Y.S.2d 579 (2d Dep't 1978). When a guarantee constitutes an independent agreement imposing greater collateral responsibility on the surety, however, the surety's liability is not so limited. *See American Trading Co. v. Fish*, 42 N.Y.2d 20, 396 N.Y.S.2d 617, 364 N.E.2d 1309 (1977); *McClare v. Massachusetts Bonding & Ins. Co.*, 266 N.Y. 371, 195 N.E. 15 (1935). The question remains whether a pay-when-paid provision, which transferred the risk of the Owner's default from Gilbane to Coppola, also limited Aetna's liability when its surety bond created an independent obligation to Coppola. The New York Court of Appeals likewise has not previously addressed this question.

 The questions we certify to the New York Court of Appeals therefore are as follows:

(1) Whether a pay-when-paid provision in a subcontract, which transfers the risk of an owner's default from a general contractor to a subcontractor, violates the public policy of New York as set forth in the Lien Law; and

(2) Whether a surety's liability is contingent on the duty of a contractor to make payment to a subcontractor when the surety bond created an independent obligation to that subcontractor.

The parties have cited no precedent of the New York Court of Appeals that controls the disposition of these questions, and we have found none. The questions should be decided by the Court of Appeals because they require the interpretation of section 34 of New York Lien Law, as well as the state's public policy supporting the enforcement of mechanic's liens, and because they require a determination of the circumstances in which a surety's obligation to a subcontractor arises independently of the obligation owed the subcontractor by a contractor. For these reasons the questions certified should be addressed "at this time." New York Rules of Court § 500.17(b).

As we stated in *Madden v. Creative Services, Inc.*, 24 F.3d 394, 397 (2d Cir.1994), although we certify the above two questions, "we also wish to make clear that we have no desire to restrict the Court of Appeals from considering any state law issues that it might wish to resolve in connection with this appeal. Therefore, though our immediate request is for answers to the questions as framed, we would welcome any guidance the Court of Appeals might care to provide us with respect to any state law issues presented by this appeal."

The foregoing two questions are hereby certified to the Court of Appeals for the State of New York as ordered by the United States Court of Appeals for the Second Circuit.

Dated at New York, New York, this 23 day of February, 1995.

> (s) GEORGE LANGE III
>
> George Lange, III, Clerk