Peters, P.J.
Appeal from a judgment of the Supreme Court (O’Shea, J.), entered September 28, 2011 in Chemung County, which, among other things, granted plaintiff’s motion for partial summary judgment.
Plaintiff is a subcontractor of Massa Construction, Inc., which had been hired to perform a public improvement project for the Elmira City School District. In accordance with State Finance Law § 137, Massa secured a labor and materials bond (hereinafter the bond) for the project from defendant, a surety, which guaranteed payment to all subcontractors on the project in the event that Massa failed to meet its payment obligations. During the course of plaintiffs work, Massa, concerned that plaintiff was not paying pension fund benefits to certain of its employees in violation of the subcontract, ceased making payments to plaintiff. After being denied final payment from Massa, plaintiff filed a claim with defendant for payment on the bond, which defendant denied.
Plaintiff commenced this action against defendant seeking to secure payment on the bond in the amount of $229,039, alleging that Massa had breached the subcontract by refusing to remit the outstanding balance despite plaintiff’s completion of the work and timely demands. Defendant’s answer asserted a *1285 number of defenses and counterclaims, including, as relevant here, that plaintiff materially breached its contract with Massa by failing to make pension fund contributions to a local iron workers union, failing to provide Massa with certain releases and by failing to obtain its own payment bond to protect Massa against claims of plaintiffs employees, thereby discharging defendant from its obligation to ensure payment to plaintiff. Supreme Court granted plaintiffs subsequent motion for partial summary judgment on the issue of defendant’s liability, denied defendant’s cross motion seeking, among other things, to compel plaintiffs compliance with certain discovery requests and remitted for a hearing to assess the amount of damages. Defendant appeals,[1] and we affirm.
State Finance Law § 137 requires the general contractor on a public improvement project to secure a labor and materials bond “guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor” on the project (State Finance Law § 137 [1]) and entitles “[e]very person who has furnished labor or material” on a public works project to sue for payment on the bond (State Finance Law § 137 [3]). Generally, the surety is required to make all payments due to a claimant, its liability limited by the conditions of the bond and relevant subcontract (see Schuler-Haas Elec. Co. v Aetna Cas. & Sur. Co., 40 NY2d 883, 885 [1976]; Reliance Ins. Co. of N.Y. v American Bankers Ins. Co. of Fla., 6 AD3d 419, 420 [2004]; Riverside Iron Works v Insurance Co. of N. Am., 156 AD2d 919, 922 [1989]).[2] The bond secured by Massa here obligates defendant to remit payment to plaintiff after plaintiffs timely notice of its claim and substantiation of the amount due and owing by Massa. Plaintiffs subcontract with Massa in turn provides that final payment is due upon plaintiffs completion of its work and remittal of “satisfactory evidence of the payment of all labor, materials, and services chargeable in connection with the work.”
Contrary to defendant’s contention, plaintiff met its burden *1286 on the motion by providing competent evidence of its compliance with the terms of the subcontract sufficient to demonstrate entitlement to judgment as a matter of law (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Andrew R. Mancini Assoc., Inc. v Mary Imogene Bassett Hosp., 80 AD3d 933, 935 [2011]; Kemper Ins. Cos. v State of New York, 70 AD3d 192, 199 [2009]). Plaintiff submitted the affidavit of its president and chief executive officer, who confirmed that plaintiff completed the work under the subcontract, and the Elmira City School District’s construction manager on the project attesting to the quality of plaintiff’s work and compliance with the contractual specifications, as well as a letter from the project manager certifying plaintiffs work as “Final Complete.” An affidavit of Jeff Carroll, an agent for District Council #4 Trust Funds, which services local Glaziers Unions 660 and 677 and which has as its members all but three of plaintiffs employees on the subcontract, affirmed that plaintiff has paid all fringe benefits due to its employees. This was further confirmed by a letter from the Chairman of the District Council #4 Trust Funds.[3]
To defeat plaintiff’s prima facie showing of entitlement to payment, defendant bore the burden of submitting competent evidence to raise a triable issue of fact as to whether plaintiff materially breached its subcontract with Massa so as to alleviate defendant of its payment obligation (see Zuckerman v City of New York, 49 NY2d at 562). Defendant asserts that the audit conducted by the Iron Workers District Council of Western New York (hereinafter IWDC) (see n 3, supra) proves plaintiff’s noncompliance with the subcontract. Yet, no suggestion is made in the audit that members of the IWDC employed by plaintiff have not been paid. Rather, because glazier union members employed by plaintiff were being paid at the IWDC iron workers’ rate, the IWDC believed that it was also entitled to monetary contributions.
Moreover, no showing has been made by defendant that plaintiffs failure to make the payments sought by the IWDC is in violation of any local, state or federal law, as would also be *1287 necessary to constitute a breach of the subcontract. Nor does defendant provide authority for the proposition that plaintiff is required to pay its employees’ pension fund contributions to an entity of which its union employees are not members. Furthermore, there is simply no evidence in the record to explain why plaintiff is obligated to contribute to a multiemployer plan that includes the IWDC so as to support defendant’s assertion that plaintiff is in violation of certain indicated provisions of the Employment Retirement Income Security Act (see 29 USC § 1145). In the event that evidence of such a violation might exist outside the record, defendant has nevertheless failed to allege how Massa has been prejudiced by the violation sufficient to constitute a material breach of the subcontract (see Unigard Sec. Ins. Co. v North Riv. Ins. Co., 79 NY2d 576, 581 [1992]; Restoration Realty Corp. v Robero, 58 NY2d 1089, 1091 [1983]; Smolev v Carole Hochman Design Group, Inc., 79 AD3d 540, 541 [2010]; Robert Cohn Assoc., Inc. v Kosich, 63 AD3d 1388, 1389-1390 [2009]).
The numerous affidavits submitted by defendant’s employees and by Massa’s president and contract administrator on defendant’s behalf are likewise insufficient to raise a question of fact. To the extent that they seek to confirm that plaintiff is currently delinquent in its payment obligations to certain of its suppliers, plaintiff has confirmed that these debts indeed exist and has authorized Massa to issue joint checks to these vendors on plaintiff’s behalf, as is permitted by the terms of the subcontract. Notably, pursuant to the express terms of the subcontract, plaintiff’s nonpayment in this regard does not relieve Massa of its obligation to continue performance under the contract (see Robert Cohn Assoc., Inc. v Kosich, 63 AD3d at 1389-1390; see also Frank Felix Assoc., Ltd. v Austin Drugs, Inc., 111 F3d 284, 289 [2d Cir 1997]), but merely results in a decrease in the subcontract price in an amount appropriate to indemnify Massa for the payments. Thus, the affidavits create a question of fact only as to the amount due to plaintiff under the contract, and not to defendant’s liability as surety.
Lastly, defendant points to plaintiffs failure to obtain a separate payment bond for the benefit of Massa or provide a release from the glaziers unions attesting to plaintiffs good standing. However, defendant concedes in its brief that the subcontract does not impose a bond requirement upon plaintiff, and the Carroll affidavit submitted on behalf of the glaziers unions explains that the fringe benefit trust has a policy of not providing such releases in order to retain its audit rights, but confirms that plaintiff is current on the union members’ fringe benefits. *1288 Accordingly, Supreme Court’s grant of summary judgment to plaintiff on the issue of defendant’s liability was proper (compare Carpenter’s Local Union No. 964 Pension Fund v Nyack Waterfront Assoc., 226 AD2d 494, 495 [1996]).
Lahtinen, Spain, Kavanagh and McCarthy, JJ., concur. Ordered that the judgment is affirmed, with costs.

. Having failed to advance any argument in its brief regarding the denial of its cross motion, defendant has abandoned any challenge to that portion of Supreme Court’s order (see Adamec v Mueller, 94 AD3d 1212, 1213 n 1 [2012]).

. Plaintiff does not contest defendant’s entitlement, as surety, to assert any defense available to Massa, as principal, on the subcontract in defense of plaintiffs action to secure payment on the bond (see Brownell Steel, Inc. v Great Am. Ins. Co., 28 AD3d 842, 843 [2006]; Riverside Iron Works v Insurance Co. of N. Am., 156 AD2d at 922; Mid-Island Shopping Plaza Co. v Cutler, 112 AD2d 405, 408 [1985]; Spancrete Northeast v Travelers Indem. Co., 112 AD2d 571, 572 [1985], lv dismissed and denied 66 NY2d 605, 909 [1985]; Durable Group v De Benedetto, 85 AD2d 524, 524 [1981]).

. Although plaintiff also submitted the results of an audit conducted by the Iron Workers District Council of Western New York (hereinafter IWDC) asserting that, as of August 2010, plaintiff was owing certain pension contributions to IWDC based upon iron workers’ work performed by members of the glaziers unions during the scope of their employment with plaintiff in IWDC jurisdiction, the Carroll affidavit explained that all of plaintiff’s employees listed in the IWDC audit are in fact members of Glaziers Unions 660 or 677— which had been paid all fringe benefits owed by plaintiff — and are not members of any iron workers union.